WILLIAM RAMSDELL, *in Equity, versus* CYRUS EMERY & *als.*

If the obligee of a bond, for the conveyance of land, assign such bond to a third party, with a verbal agreement that it shall be held as collateral securi-ty for sums due on account, and the account not being paid, the assignee of the bond pays the obligor, and takes a deed to himself, there is no implied resulting trust.

And if, afterwards, the parties compromise, and settle their accounts, and give mutual discharges, without mentioning the land so conveyed, but which is really worth less than the amount due from the original obligee of the bond, he is not entitled to have a conveyance to himself, and a court of equity will not interfere.

THIS was a BILL IN EQUITY, in which the plaintiff sought to compel the defendants to convey to him one third part of township number 8, in the 4th range, and to account for cer-tain quantities of lumber sold therefrom. The case was heard on bill, answers and proof.

It appeared that, in 1844, the plaintiff procured from one Benjamin Shaw, a bond for the conveyance of one undivided third part of the said township, which bond the plaintiff as-signed to the defendants, as collateral security for sums al-ready due on account, and for such further advances as they might make for him. There was no written agreement relat-ing to such collateral holding. The defendants also held oth-er collaterals.

In 1845, the plaintiff was indebted to the defendants more than five thousand dollars, which debt increased from year to year, until, in 1847, it amounted to over nine thousand dollars. The defendants then paid Shaw the amount due for

the one third of said township of land, and took a deed thereof to themselves.

The debts due to the defendants, from the plaintiff, continued to increase, annually, instead of diminishing, until October, 1850, when they amounted to $32,521. He being then unable to pay, if not actually insolvent, the parties entered into a settlement, by which, upon certain conditions, the plaintiff surrendered all his interest in the collaterals held by the defendants, and they exchanged mutual discharges from all demands. But there was no surrender of any interest in township number eight, because, as the defendants allege, they already had the title thereof. They thereupon took possession of all the property and occupied it as their own,—but, still keeping an account of the proceeds thereof for their own satisfaction, and, as partners, to be able to adjust the operation among themselves.

The defendants alleged that the entire proceeds of the property, exclusive of the township number eight, did not amount to so much as the plaintiff's indebtment to them by $14,144,27, and that said township was worth far less than that amount. They admitted that they, after the settlement in 1850, gave permits, and operated on said township, as they claimed the right to do; but they alleged that said operations resulted in a loss, instead of a gain, to themselves,—so that, while they denied their liability to account to the plaintiff, there was no balance in their hands.

The case was argued by *N. Wilson,* for the plaintiff, and—

*A. W. Paine,* for the defendants.

The opinion of the Court was delivered by

Goodenow, J. — The bill seeks a decree to compel the defendants to make a conveyance of one third part of township No. 8, to the plaintiff; and further, to compel them to pay such sums of money as may be due for stumpage, &c.

In *Fisher* v. *Shaw & als. in equity,* 42 Maine, 32, it was held that no relief could be decreed by ordering a conveyance

Ramsdell *v.* Emery.

of real estate, where there was no written obligation between the parties. This is not, in our opinion, a case of resulting trust. The last payment made to Shaw, the obligee, was made by the defendants. It was their own money. The deed from Shaw to them was absolute. They were willing to sell to the plaintiff at cost, and that he should have a right of preëmption; and, for this purpose, they kept an account of the profits and loss, arising from their interest in this township. In all cases of implied trust, the right is perfect when the money of the *cestui que trust* has been paid. The land is substituted for the money.

But it appears that various settlements have been made between the parties. That their business transactions had been of long standing, and were various and complicated. That, as late as October 23, 1850, and November 1 & 2, 1852, there was a final settlement, and there was found due from the plaintiff to the defendants the sum of $32,521,92, for which, as the plaintiff alleges, they held townships No. 7 & 8, and personal property, as collateral security.

By the terms of that settlement, according to the proof, we are led to the conclusion, that it must have been the fair understanding of the parties at that time, that the title of $\frac{1}{3}$ of township No. 8 was to remain, undisturbed, in the defendants, where it then was, absolutely.

From the proof in the case, the whole property received by the defendants as collateral security, for advances made by them to the plaintiff, including $\frac{1}{3}$ of township No. 8, was found insufficient to save them harmless by more than $12,000. It appears to have been a losing concern all round. The plaintiff lost his time and they lost their money.

*The bill must be dismissed, with costs for defendants.*

Tenney, C. J., and Rice, Hathaway, Appleton, and Cutting, J. J., concurred.